866 P.2d 881

**STATE of Arizona, Appellant,**

v.

**George Bart HONE, Appellee.**

**No. 1 CA–CR 91–1143.**

Court of Appeals of Arizona,
Division 1, Department D.

May 11, 1993.

Review Denied Feb. 1, 1994.*

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Colleen French, Asst. Atty. Gen., Phoenix, for appellant.

Robbins & Green, P.A. by Jeffrey P. Boshes, Phoenix, for appellee.

## OPINION

GRANT, Presiding Judge.

This appeal arises out of a criminal citation issued to appellee George Bart Hone ("defendant") for violation of Ariz.Rev.Stat.Ann. ("A.R.S.") section 24–267 by Arizona Livestock Officer Wayne Welsh ("Officer Welsh"). A.R.S. section 24–261(C) [1] empowers Arizona Livestock Officers such as Officer Welsh to stop persons transporting livestock or hides of livestock to check for documents evidencing ownership and inspection as required by A.R.S. sections 24–274 and 24–267. [2]

## FACTS AND PROCEDURAL HISTORY

On May 1, 1990, pursuant to A.R.S. section 24–261(C), Officer Welsh stopped a pickup truck pulling a livestock trailer driven by defendant in Yarnell, Arizona, in order to determine if the driver possessed the necessary documents to transport livestock legally. Defendant had horses in the trailer but did not have the required papers in his possession. Officer Welsh cited defendant for hauling horses without the requisite documentation in violation of A.R.S. section 24–267.

---

* Martone, J., of the Supreme Court, voted to grant review.

1. A.R.S. section 24–261(C) reads:

C. Inspectors shall prevent the hides of livestock from being shipped or transported, and shall prevent any livestock from being shipped, driven or transported unless identified by proof or by bill of sale signed by the owner of the hides or livestock, and may stop any person who is in possession of and is conveying, shipping or transporting livestock and demand the

duplicate certificate of the record of inspection, or the special shipping permit issued pursuant to § 24–267.

2. Title 24, A.R.S. sections 24–101 through 965, was renumbered and now appears at A.R.S. sections 3–1201 through 2695. There has also been some rewording. However, the meaning is unchanged for purposes of this appeal. We will use the old numbered statutes in this opinion for ease and consistency with the briefs and the underlying citation.

On May 18, 1990, defendant pled not guilty in Yarnell Justice Court and later filed a motion to suppress all evidence discovered as a result of the stop, basing the motion on fourth amendment grounds. The Justice of the Peace denied the motion. On October 22, 1990, defendant filed a motion to dismiss the case based upon the alleged unconstitutionality of A.R.S. section 24–261(C). The Justice of the Peace referred the matter to the Yavapai County Superior Court, as he determined that he did not have jurisdiction to consider the constitutionality issue. Following oral argument, the trial court held that A.R.S. section 24–261(C) is unconstitutional because it gives unfettered discretion to the livestock officers. The trial court remanded the matter to justice court, directing that court to grant defendant's motion to suppress. The State appealed.

## DISCUSSION

Defendant challenged the validity of A.R.S. section 24–261(C) on several grounds. Defendant argues that A.R.S. section 24–267, which he was cited for violating, does not actually state a requirement that persons transporting livestock have the requisite documentation in their physical possession. Defendant also alleges that A.R.S. section 24–261(C) is not eligible for the "closely regulated business premises" exception to the fourth amendment's warrant requirement because a vehicle traveling on the road is beyond the "business premises" and because persons engaged in both private conduct and commercial livestock transportation are subject to the regulations. Defendant further argues that even if a "business premises" exception exists, A.R.S. section 24–261(C) does not satisfy the three part test for this exception articulated in *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). Last, defendant argues that A.R.S. section 24–261(C) violates the fourth amendment because it authorizes a roving or random stop without at least a reasonable suspicion of a violation of law. The State argues that the roving stops by livestock officers authorized by A.R.S. section 24–261(C) qualify as a "closely regulated business" exception to the fourth amendment under the rule established in *New York v. Burger*.

We initially note that the facts and circumstances of the present case demonstrate that the warrantless search in this case cannot be neatly and singularly analyzed either under a *Burger* closely regulated business exception or as a roving stop in accordance with *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). The situation presented is not "either or." Rather, there are overlapping indicia of both. Our analysis and conclusion are based upon those considerations that have been expressed under both *Burger* and *Prouse* and under *United States v. Dominguez–Prieto*, 923 F.2d 464 (6th Cir.1991), *cert. denied*, 500 U.S. 936, 111 S.Ct. 2063, 114 L.Ed.2d 468 (1991), also a "pervasively regulated business" case.

## The *Burger* exception

The State's primary argument is that the livestock industry is a closely regulated industry and that this search meets the requirements of the "business premises" exception to the fourth amendment warrant requirement. The state contends that, because the livestock industry has been closely regulated since territorial days and because the goals of public health and safety (such as assuring the public non-diseased meat), as well as prevention of theft, further substantial state interests, the statute is proper. Therefore, our analysis proceeds with the assumption that the livestock industry is a "closely regulated business."

The case which establishes the test for a "closely regulated business premises" exception is *New York v. Burger*, a case that involved the warrantless inspection of vehicle dismantling businesses. *Burger* presented the question whether the warrantless search of an automobile junkyard, conducted pursuant to a statute authorizing such a search, fell within the exception to the warrant requirement for administrative inspections of closely regulated industries. *Burger* held that the fourth amendment's prohibition against unreasonable searches and seizures, which is applicable to commercial premises as well as private homes, "exists not only with respect to traditional police searches conducted to gather criminal evidence but

also with respect to administrative inspections designed to enforce regulatory statutes." 482 U.S. at 698, 107 S.Ct. at 2641–42.

A warrantless search, even in the context of a closely regulated business, where privacy interests are lessened, will be deemed reasonable only if three criteria are met, as follows:

First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made.

\*     \*     \*     \*     \*     \*

Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.'

\*     \*     \*     \*     \*     \*

Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.' [Citation omitted.] In other words, the regulatory statute must perform the two basic functions of a warrant; it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.

*Burger*, 482 U.S. at 702–703, 107 S.Ct. at 2643–44, *quoting Donovan v. Dewey*, 452 U.S. 594, 602–603, 101 S.Ct. 2534, 2539–40, 69 L.Ed.2d 262 (1981).

If the livestock industry were a "closely regulated business" and if livestock trailers on the road were "commercial business premises," A.R.S. section 24–261(C) would nonetheless fail the third prong of the *Burger* test. Since all three prongs must be met to satisfy the *Burger* test, a failure of one prong is a failure of the whole test. A.R.S. section 24–261(C) does not adequately limit the discretion of the officers as required by the third prong. Indeed, it does not limit the discretion of the officers at all. The livestock officers are free to stop any trailer or vehicle that may be transporting livestock or hides of livestock to search for the requisite documents. There is no requirement that the livestock officer have even a suspicion that the driver is violating the statute or, for that matter, that the trailer or vehicle has livestock or hides of livestock aboard. In fact, Officer Welsh testified that they would stop *all* such vehicles if they had time, with or without articulable suspicion that the vehicle in question carried livestock or hides of livestock. Thus, even if the livestock industry were determined to be a closely regulated business, A.R.S. section 24–261(C) would thus fail the third prong of the *Burger* test.

Furthermore, we are left with the issue of whether vehicles on the road can be considered "business premises" for purposes of the *Burger* exception. While we assume, without deciding, that the livestock industry is, "closely regulated," the word "industry" as applied in the statute would include persons who are engaged in transporting livestock for personal, not commercial, reasons. The state contends that the defendant in this case does not have standing to assert this argument because he was in fact engaged in transportation of livestock for commercial reasons. Nevertheless, the "business premises" issue is a factor contributing to the unconstitutionality of the statute. *Burger* deals with the on-site inspection of an automobile junkyard and, therefore, is not very helpful in determining how far the "premises" extend. Demarcation of the business premises was not an issue in *Burger*.

For that, we turn to *Dominguez–Prieto*, a case involving the warrantless inspection of a "pervasively regulated business," namely the transportation of commodities by truck. *Dominguez–Prieto* involved the warrantless search by the Tennessee Public Service Commission of a trailer portion of a truck. The search was found not to violate the fourth amendment because it was made pursuant to the "pervasively regulated business" doctrine. The authority to conduct the search came from the statute controlling the duties, responsibilities and authority of the Public Service Commission over every motor carrier in the state. The statute further directs the Commission to designate enforcement officers charged with the duty of policing and enforcing the provisions of the statute, including making arrests. The statute then states:

(3) Such enforcement officers upon reasonable belief that any motor vehicle is being operated in violation of any provisions of this part, shall be authorized to require the driver thereof to:

(A) Stop and exhibit the registration certificate issued for such vehicle;

(B) Submit to such enforcement officer for inspection any and all bills of lading, waybills, invoices or other evidences of the character of the lading being transported in such vehicle; and

(C) Permit such officer to inspect the contents of such vehicle for the purpose of comparing same with bills of lading, waybills, invoices or other evidence of ownership or of transportation for compensation.

* * * * * *

There are several key factual distinctions between *Dominguez–Prieto* and the instant case. First, the Tennessee statute itself requires a "reasonable belief," a requirement that is lacking in the Arizona statute. Second, Dominguez–Prieto was initially stopped at a truck inspection station for a routine examination for compliance with federal and state safety and hauling regulations. Several factors added up to provide the officer a reasonable belief to search the trailer portion of the rig: the driver was visibly nervous and shaking, did not have a bill of lading, said he was driving without a load from Houston to New York City, his log book was six days out of date, the supposedly empty rig was padlocked and the driver claimed that he did not have the keys. The search revealed boxes filled with cocaine.

The Sixth Circuit found the trucking industry to be a pervasively regulated industry and then turned its inquiry to whether the Tennessee statute passed the three-pronged *Burger* test. Warrantless inspection of a pervasively regulated business is reasonable when (1) there is a "substantial" government interest that informs regulatory schemes pursuant to which the inspection is made; (2) the warrantless inspection is necessary to further the regulatory scheme; and (3) the statutory inspection program, in terms of certainty and regularity of its application, provides a constitutionally adequate substitute for the warrant. The "premises" issue was not discussed in *Dominguez–Prieto,* presumably because the stop here was at a routine fixed checkpoint for common carriers in the trucking industry.

However, we believe that, even if the livestock industry is a closely regulated business, we cannot conclude that public roads and highways are part of the livestock industry's premises. Since the stop here was a roving stop, to hold that the road or any vehicle on it is part of the industry's premises would make the whole state part of the "business premises." The search in *Dominguez–Prieto* took place at a checkpoint stop for commercial common carriers in the trucking industry, as opposed to the roving patrol stop found in this case.

Most of the cases discussing the relationship of the fourth amendment to the trucking industry involve weighing and cargo inspection stations, usually dealing with the reasonableness of searches at weighing stations. In *Prouse,* a case which declares unconstitutional random stops of vehicles to check drivers' licenses and vehicle registrations, the court was careful to point out that it did not intend to "cast doubt on the permissibility of roadside truck weigh stations and inspection checkpoints, at which some vehicles may be subject to further detention for safety and regulatory inspection than are others." The checkpoints must pass the balancing test of *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (9th Cir.1967), which held that the public interest being served by the practice at issue must be balanced against the fourth amendment interests of the individuals who are interfered with by the practice. (*Camara* involved the inspection of a residence by building inspectors without a warrant.) Because we believe that the roving stop aspect of A.R.S. section 24–261(C) is a significant factor in determining the constitutionality of the statute, it must be addressed.

## Roving stop analysis

The defendant argues that A.R.S. section 24–261(C) offends the privacy interests of persons owning or transporting horses beyond the business premises because it sub-

jects them to roving patrol stops by livestock officers. Again, we look to *Prouse*, as particularly relevant.

*Prouse* involved a police officer's random stop of a vehicle and the detention of its driver for a check of the driver's license and the vehicle's registration, without either probable cause to believe or reasonable suspicion that the car was being driven in violation of any motor vehicle laws or that either the car or any occupant thereof was guilty of violation of any other applicable law. The stop was held violative of the fourth amendment as an unreasonable seizure. The patrolman in *Prouse* who stopped the vehicle testified that:

> ... prior to stopping the vehicle he had observed neither traffic or equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and registration.

*Id.* at 650, 99 S.Ct. at 1394. The Supreme Court in *Prouse* referred to its past decisions defining the requirements of the fourth amendment. It stated that "[t]he essential purpose of the proscription in the fourth amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents...." *Id.* at 653–654, 99 S.Ct. at 1395–96. The Supreme Court further explained that this reasonableness requirement necessitates some finding of reasonable suspicion in order to prevent individual privacy interests from being subjugated to the unbridled discretion of the officers in the field. *Id.* at 654–655, 99 S.Ct. at 1396–97. *See also Camara*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930; *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The *Prouse* court further stated:

> To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion 'would invite intrusions upon constitutionally guaranteed rights based on nothing more than inarticulate hunches....'

440 U.S. at 661, 99 S.Ct. at 1400, *quoting Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). In denouncing as unconstitutional this unbridled discretion of the field officers to check randomly for registration documents, the Supreme Court also pointed out that "[t]his kind of standardless and unconstrained discretion is the evil the Court has discerned when, in previous cases, it has insisted that the discretion of the official in the field be circumscribed, at least to some extent." *Id.* 440 U.S. at 661, 99 S.Ct. at 1400, *citing Almeida–Sanchez v. United States*, 413 U.S. 266, 270, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973); *Camara*, 387 U.S. at 532–533, 87 S.Ct. at 1732–33.

Other Supreme Court cases have addressed the legality of a roving police stop. In *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Supreme Court addressed the authority of the United States Border Patrol to stop automobiles in areas near the Mexican border, without probable cause to believe that the vehicles contained illegal aliens, in order to question the occupants about their citizenship and immigration status. The Supreme Court held that:

> [e]xcept at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.

422 U.S. at 885, 95 S.Ct. at 2582. While this falls short of requiring probable cause for roving stops, the case does require a reasonable suspicion to keep from running afoul of the fourth amendment.

*United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), goes further to say that when officers advanced no special reasons for believing that the defendant's vehicle contained aliens, probable cause did not exist and the search of the vehicle was invalid.

Additionally, fourth amendment requirements have been held to be stricter for roving patrol stops than for fixed checkpoint stops. In *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116

(1976), the Supreme Court observed as follows:

> [The] objective intrusion—the stop itself, the questioning, and the visual inspection—also existed in roving-patrol stops. But we view checkpoint stops in a different light because the subjective intrusion—the generating of concern or even fright on the part of lawful travelers—is appreciably less in the case of a checkpoint stop.

428 U.S. at 558, 96 S.Ct. at 3083. As such, the roving stops authorized by A.R.S. section 24–261(C) must be subject to a more rigorous fourth amendment analysis than that of a fixed checkpoint stop. The controlling factor in determining the constitutionality of the stop and search permitted by A.R.S. section 24–261(C) is reasonableness:

> As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures *depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.* [emphasis added.]

*United States v. Brignoni–Ponce,* 422 U.S. at 878, 95 S.Ct. at 2578–79.

Here the state has presented virtually nothing to support a public interest need so compelling as to justify the warrantless, random stops of vehicles which may or may not be conveying, shipping or transporting livestock.

### CONCLUSION

We hold that A.R.S. section 24–261(C) is unconstitutional because it empowers Arizona Livestock Officers to conduct random, roving patrol stops of any vehicle capable of carrying hides or livestock without a reasonable suspicion or probable cause based on articulable facts to believe that A.R.S. sections 24–274 and 24–267 have been violated. We agree with the trial court that the unfettered discretion given to the livestock officer is a violation of the fourth amendment of the United States Constitution and of the Arizona Constitution. Therefore, the order of the trial court is affirmed. This case is remanded for further proceedings consistent with this decision.

CONTRERAS and LANKFORD, JJ., concur.